UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deanna Burke,

        Plaintiff,

v.

Messerli & Kramer P.A.,

        Defendant.

MEMORANDUM OPINION
AND ORDER
Civil No. 09-1630 ADM/AJB

---

Trista M. Roy, Esq., Consumer Justice Center, P.A., Vadnais Heights, MN; and Thomas J. Lyons, Sr., Esq., Lyons Law Firm, P.A., Vadnais Heights, MN, on behalf of Plaintiff.

Derrick N. Weber, Esq., and Jennifer M. Zwilling, Esq., Messerli & Kramer, Plymouth, MN; and Truman W. Schabilion, Stein & Moore, P.A., St. Paul, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On June 2, 2010, the undersigned United States District Judge heard oral argument on Defendant Messerli & Kramer's ("Messerli") Motion for Judgment on the Pleadings or Summary Judgment [Docket No. 13]. In her Complaint [Docket No. 1], Plaintiff Deanna Burke ("Burke") asserts a claim against Messerli for alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692-1692p. For the reasons set forth below, Messerli's Motion is denied.

## II. BACKGROUND[1]

Burke, a Minnesota resident, is a "consumer," as that term is defined under the FDCPA.

---

[1] Messerli's Motion argues alternatively for judgment on the pleadings or summary judgment. Because the parties have both submitted and cited material outside the pleadings, the Court will treat the Motion as one for summary judgment. On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Compl. ¶ 3.  Messerli is a Minnesota law firm that acts as a "debt collector," as that term is defined in the FDCPA.  Id. ¶ 4.

Burke incurred a "consumer debt" with Capital One Bank ("Capital One").  Id. ¶ 5.  In 2003, Burke paid off the debt owed to Capital One pursuant to a settlement agreement.  Id. ¶ 6.  Due to an apparent mistake by Capital One about the status of the debt, Messerli was retained to collect the debt, through litigation if necessary.  To initiate the collection process, Messerli sent a demand letter to Burke on February 3, 2009 ("the February 3 demand letter").  See Roy Aff. [Docket No. 24], Ex. A (Weber Dep.) 9:8-24; Weber Aff. [Docket No. 21] ¶¶ 3-4.  The February 3 demand letter was returned as undeliverable to Messerli and was not received by Burke.  Weber Dep. 15:23-17:17.  Messerli obtained a new address for Burke and re-sent the demand letter on February 25, 2009 ("the February 25 demand letter"), which Burke received on February 26, 2009.  Id. 17:18-18:10; Burke Aff. [Docket No. 23] ¶ 2.  The February 25 demand letter reads, in pertinent part:

> As you may know, this office represents Capital One Bank (USA), N.A. in connection with the balance owing in the above matter.
>
> Please contact our office at (***) ***-**** to discuss resolution of this matter.
>
> This letter is written to provide you with the notice required under the Fair Debt Collection Practices Act . . . .
>
> **IMPORTANT NOTICE CONCERNING YOUR RIGHTS**
> This communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be used for that purpose.  Unless you notify us within 30 days after receipt of the letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid.  If you dispute the debt in writing, we will obtain verification of the debt and mail it to you. . . .

Burke Aff., Ex. 1.

Burke placed a telephone call to Messerli the day of her receipt of the demand letter and informed Messerli that she had previously paid the Capital One debt through a settlement. Id. ¶ 3. According to Burke, the Messerli representative responded that Burke needed to send in proof that the terms of the settlement had been satisfied. Id. On March 1, 2009, Burke sent materials to Messerli regarding the settlement of her debt ("the March 1 materials"); however, the parties disagree over what materials were received. Burke claims she sent three items:

- the February 25 demand letter with the following handwritten notation: "THIS DEBT IS PAID IN FULL AS PER THE SETTLEMENT AGREEMENT. DO NOT CONTACT ME AGAIN!";

- a copy of a September 29, 2003 settlement statement with the following handwritten notation: "This debt is paid in full as per this settlement agreement!"; and

- a September 30, 2003 letter from a debt collection company confirming that its client, Capital One, had accepted the settlement.

Id., Ex. 2 at 1-3. Messerli claims it received only the settlement statement and the September 30 letter but not the February 25 demand letter with the handwritten notation. Messerli received the March 1 materials on either March 5 or March 6, 2009. Weber Aff. ¶ 5; Weber Dep. 31:1-16.

On March 13, 2009, Messerli responded to Burke in a letter ("the March 13 letter"):

> The letter you provided is a proposed settlement offer letter. In order for our client to validate your claim that this debt has been paid[,] it is necessary that you provide our office with documentation that the payments proposed in the letter were actually made. Please send us the documentation to support your claim that payments were made at your earliest convenience. If we do not receive the requested documentation we may proceed accordingly.

3

Burke Aff., Ex. 3; Weber Aff., Ex. 2.  The March 13 letter also included an "Important Notice" at the bottom of the page that "[t]his communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be used for that purpose."  Id.

In response to Messerli's March 13 letter requesting additional documentation, Burke sent another letter dated March 22, 2009, to Messerli along with three pages of her credit reports, which showed the Capital One debt had been paid or settled.  Id. ¶ 8, Ex. 5.  Three days later, a Chicago attorney sent a letter to Messerli advising that he had been retained to represent Burke in a claim that Messerli's actions in February and March 2009 violated the FDCPA.  Weber Aff., Ex. 3.  Messerli responded on April 16, 2009, disputing the claim that it had failed to discontinue collection efforts and maintaining that its actions in February and March were consistent with its obligation as a law firm to its client, Capital One.  Id., Ex. 4.  Burke's attorney responded on April 23, 2009, iterating the position of his previous letter.  Id., Ex. 5.  Burke then initiated this action on June 24, 2009.

### III.  DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Failure to Cease Collection and Failure to Verify**

The FDCPA provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed . . . . Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . .

15 U.S.C. § 1692g(b). Burke alleges that the March 1 materials she sent to Messerli constituted notice of a dispute of the debt. Thus, by sending the March 13 letter requesting documentation to show that the settlement of the debt had indeed been satisfied, Messerli failed to cease collection activities and communications, in violation of § 1692g(b). Burke alleges Messerli also violated § 1692g(b) by failing to verify the debt after Burke disputed it with the March 1 materials she sent. Compl. ¶¶ 10-11.

Messerli argues that Burke's claim for violations of § 1692g(b) fails because (1) the March 1 materials Burke sent to Messerli do not constitute a notice of a dispute of the debt; (2) to the extent they do constitute a notice of a dispute of the debt, the dispute notice was untimely; (3) Messerli's March 13 letter does not constitute a communication in connection with the

collection of a debt and, therefore, does not fall under the ambit of the FDCPA; and (4) Messerli ceased collection of the debt after receiving the March 1 materials and, thus, was under no obligation to verify the debt. Def.'s Mem. in Supp. of Mot. for Summ. J. [Docket No. 10] at 4-13.

    1.  **Dispute of a Debt**

  The requirements in § 1692g(b) that a debt collector cease collection activities, obtain verification of the debt, and send the verification to the consumer is triggered if the consumer informs the debt collector in writing that the debt is "disputed." Messerli argues that it is not clear from the March 1 materials that they were in fact sent by Burke and that nothing in the materials "present[s] a clear indication of [Burke's] dispute of a debt, and instead requires inferences about [Burke's] intent." Id. at 13. Messerli reasons that there is no language stating, for example, that Burke refuses to pay, that she does not owe the debt, that the debt is not valid, or that she disputes the debt. Therefore, Messerli concludes, Burke did not "dispute" the debt.

  Messerli cites no authority, and the Court is aware of none, that a consumer must use particular language to indicate that he or she disputes a debt. The March 1 materials that Messerli admits it received showed that a settlement had been reached regarding the debt and conveyed that Burke was questioning the existence, validity, or extent of the debt. Burke avers she also included in the March 1 materials the February 25 demand letter with her handwritten notation,"THIS DEBT IS PAID IN FULL AS PER THE SETTLEMENT AGREEMENT. DO NOT CONTACT ME AGAIN!" Assuming Burke did in fact send the demand letter with the handwritten notation, as the Court is required to do in considering Messerli's motion for summary judgment, the handwritten notation clearly shows that Burke disputed the debt.

## 2. Timeliness of the Notice of Dispute

Messerli argues that a debt collector's obligation to cease collection activities and verify the debt is triggered only if the consumer notifies the debt collector in writing of the dispute within thirty days of the debt collector's initial communication. Messerli contends that the initial communication was its February 3 demand letter. Because Messerli did not receive a written communication (i.e., the March 1 materials) from Burke until March 6, Messerli concludes, Burke's written dispute notice was one day late. Messerli's argument is meritless for numerous reasons, any of which is independently sufficient.

First, Messerli improperly argues the thirty-day period commences on the date that the initial communication was sent, February 3. The plain language of the statute provides that the thirty-day period begins running when the initial communication is *received* by the consumer. 15 U.S.C. § 1692g(a)(3). Messerli completely ignores the testimony by its own representative that the February 3 demand letter was returned to Messerli due to an incorrect address and never received by Burke. Weber Dep. 15:23-18:25. In addition, even accepting Messerli's argument, which ignores that the February 3 demand letter was returned, the starting date of the thirty-day period still would not be the February 3 date on which the communication was sent but a day or two later when the demand letter had arrived through the mail system.

Second, Messerli's argument does not address the evidence that Burke called Messerli on approximately February 26 when she received the February 25 demand letter and disputed the debt by stating that it had already been paid. The weight of authority is that an orally communicated dispute of the debt within thirty days of the initial communication is sufficient under § 1692g. See Camacho v. Bridgeport Fin., Inc., 430 F.3d 1078, 1081 (9th Cir. 2005)

(disagreeing with the Third Circuit's conclusion in Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991) that a dispute must be in writing to be effective under § 1692g); accord Campbell v. Hall, 624 F. Supp. 2d 991, 997-1001 (N.D. Ind. 2009) (citing cases).

Third, Messerli's argument improperly ends the thirty-day period on March 6, the day that it received the dispute notice from Burke. To the contrary, the courts that have considered the issue have concluded that the thirty-day period ends when the consumer sends the dispute notice to the debt collector, not when the debt collector receives the dispute notice. See Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 94-95 (2d Cir. 2008) (agreeing with the Seventh Circuit and Judge Weinstein of the Eastern District of New York). Thus, even if it were necessary that the dispute notice be in writing as Messerli contends, the operative date in determining whether the dispute notice was timely is the date on which Burke sent the materials, March 1.[2]

### 3. Communication in Connection with the Collection of a Debt

Messerli argues that its March 13 letter to Burke does not constitute a communication in connection with the collection of a debt and, for that reason, cannot violate § 1692g's requirement that collection activities cease after receiving a dispute notice. See Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384, 388-89 (7th Cir. 1998) ("Under the law[,] only communications in connection with the collection of any debt (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the defendants' letters cannot reasonably be placed in that

---

[2] Even if the time period were measured from the date that Messerli received the dispute notice, Messerli's calculation of March 6 as the end date still is doubtful as it contradicts the deposition testimony by its representative that the March 1 materials sent by Burke were received on March 5, not March 6. See Weber Dep. 31:1-16.

category.") (quotation marks omitted).

In support of its argument, Messerli relies on Francis v. GMAC Mortgage, No. 06-CV-15777-DT, 2007 WL 1648884 (E.D. Mich. June 5, 2007). There, the plaintiff settled a mortgage debt owned by a lender (Old Canal). Id. at *1. Old Canal subsequently sold the debt to the defendant and informed the plaintiff of the sale, which prompted the plaintiff to send a letter to the defendant, along with a copy of the settlement agreement, to inform the defendant that "she did not owe the debt, the debt was not valid, and [the defendant] should not attempt to collect on it." Id. The defendant responded in two letters. Id. The first letter was an acknowledgment that the defendant received the plaintiff's letter. Id. The second letter stated that the settlement agreement the plaintiff had previously provided was "not sufficient to terminate [the plaintiff's] obligations to [the defendant]" and that additional information was needed. Id. The court concluded that although the letters had a connection to the plaintiff's debt, neither had anything to do with the collection of the debt, but rather the discharge of the debt. Id. at *4. Therefore, the court held that the letters were not communications in connection with the collection of a debt and were instead "in the nature of a customer service response." Id.

Messerli reasons that the March 13 letter is equivalent to the second letter in Francis because it requests additional information in connection with the *possible discharge* of Burke's debt rather than in connection with the *collection* of Burke's debt. Therefore, Messerli concludes, the March 13 letter did not continue to collect Burke's debt and Messerli did not violate § 1692g. In Francis, it was undisputed that the challenged letter did not disclose that it was from a debt collector and an attempt to collect a debt. Id. at *3. The letter also did not threaten further collection efforts, demand payment, or provide terms of payment. Id. at *3-4.

Here, however, the March 13 letter includes a notice that "[t]his communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." Weber Aff., Ex. 2. By including the disclosure, Messerli expressly conveyed that the March 13 letter was "an attempt to collect a debt." The argument that the letter was not a communication in connection with the collection of a debt when the language of the letter is directly to the contrary is unconvincing.

Messerli argues the March 13 letter should not be construed as a communication in connection with the collection of a debt based on the inclusion of the disclosure that it was "an attempt to collect a debt" because the FDCPA requires such a disclosure and the failure to include that language would have exposed Messerli to liability for using a "false, deceptive, or misleading representation." See 15 U.S.C. § 1692e(11). Thus, Messerli contends it is forced to decide whether to include the disclosure and subject itself to the claim at issue in this action or omit the disclosure and subject itself to a potential claim under § 1692e(11). But Messerli's dilemma is a product of its own decision to contact Burke rather than its client, Capital One, to request additional information to confirm that the debt had been settled, operating under the belief that contacting Burke instead of Capital One was the more "swift and straightforward way," Def.'s Rep. Mem. in Supp. of Mot. for Summ. J. [Docket No. 28] at 5, of investigating the debt. In addition, if Messerli were correct that the March 13 letter did not violate § 1692g(b) because it was not in connection with the collection of a debt, then there would have been no need to include the disclosure notice in the first place and the letter would not have implied that it was in connection with the collection of a debt. See Francis, 2007 WL 1648884, at *4 (holding that a § 1692e(11) disclosure is not required if the communication is not in connection

with the collection of a debt).

For similar reasons, two additional cases cited by Messerli, Silvious v. Midland Credit Managment, Inc., No. 5:07CV145, 2009 WL 2392107 (N.D. W. Va. Aug. 3, 2009) and Geiger v. Creditors, 59 F. App'x 803 (6th Cir. 2003), are also unavailing.  In Silvious, the defendant sent the plaintiff a letter notifying that the defendant was a debt collector attempting to collect a debt the plaintiff allegedly owed.  2009 WL 2392107, at *1.  When the plaintiff wrote back that he did not owe the debt, the defendant responded that it needed more information, to which the plaintiff replied that he did not have any more information.  Id. at *2.  The defendant then sent the plaintiff two letters (one on March 28 and another on April 2), both of which informed the plaintiff that the debt had been settled and the account would be closed and neither of which disclosed that they were from a debt collector.  Id.  In granting summary judgment to the defendant on the plaintiff's claim that the March 28 and April 2 letters violated the FDCPA for failing to disclose that they were from a debt collector, the court ruled that the letters were not communications in connection with the collection of a debt and, thus, did not need to include the disclosure.  Id. at *3-4.

In Geiger, the claimed violation also was that the defendant should have included the disclosure notice required by § 1692e(11) in a May 7 letter informing the plaintiff that the defendant was attempting to verify the debt as the plaintiff had requested and denying that the defendant's initial April 11 communication (a demand letter) was improper.  59 F. App'x at 804.  The court rejected the plaintiff's claim, concluding that because the May 7 letter merely informed the plaintiff that the defendant was verifying the debt and denied that the April 11 letter was improper, the May 7 letter was not in connection with the collection of a debt and the

11

disclosure language of § 1692e(11) was not required.  Id.

Unlike the March 13 letter at issue here, which disclosed that it was an attempt to collect a debt and the information obtained would be used "for that purpose," the letters being challenged in Silvious and Geiger, like the letter in Francis, were for purposes other than the collection of a debt, and they did not suggest otherwise by including a § 1692e(11) disclosure. The other cases cited by Messerli also involved claims that letters sent for purposes other than to collect a debt violated § 1692e(11) because they failed to disclose that they were from a debt collector and an attempt to collect a debt.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 10 (citing cases).  Thus, in the cases cited by Messerli, the conclusion that the letters were not in connection with the collection of the debt made sense because it was not contradicted by the express language on the face of the letters.[3]

    **4.**    **Cessation of Collection**

Upon receiving a dispute notice from a consumer, a debt collector must either verify the debt and provide such verification to the consumer before continuing collection activities or cease all collection activities.  See Wilhelm v. Credico, Inc., 519 F.3d 416, 419 (8th Cir. 2008). Messerli argues that upon receiving Burke's March 1 materials, it ceased all collection activities and therefore was not required to verify the debt.  In taking this position, Messerli again relies on

---

[3] Messerli also argues that it was bound by the Minnesota Rules of Professional Conduct and the Minnesota Rules of Civil Procedure to inform itself of the facts of its clients case and conduct a reasonable inquiry into whether the facts will have evidentiary support, which included contacting Burke to request additional information.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 11.  Even if Messerli were correct that those rules require an attorney contact an opposing party as part of the attorney's obligation to investigate his client's case, the rules do not require or license the attorney to contact the opposing party in a manner that violates the FDCPA.

its argument that the March 13 letter was not in connection with the collection of a debt. However, as explained in the previous section, see supra III.B.3, the March 13 letter is a communication in connection with the collection of a debt. Burke's claim that Messerli violated the FDCPA by failing to cease collection activities and communications without having first verified the debt after Burke disputed the debt survives summary judgment. Accordingly, the allegations that Messerli placed telephone calls to Burke's cell phone on March 14 and March 16, 2009, need not be addressed here as an additional basis for denying summary judgment.

**C.    False Representation of the Status of a Debt**

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including, inter alia, "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Burke alleges that Messerli's communications violated this provision by falsely representing that the debt was still unpaid and placing the burden on her to disprove the debt.[4] Compl. ¶¶ 10-12; Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Docket No. 22] at 15 n.6.

In evaluating whether a debt collector's conduct violated the prohibitions in § 1692e, courts view the debt collector's conduct "'through the eyes of the unsophisticated consumer.'" See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) (quoting Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000)). The "unsophisticated consumer" test is "designed to protect consumers of below average sophistication or intelligence, but [it] also

---

[4] Burke claims that by requesting in its March 13 letter that she provide additional information to confirm the debt had been paid, Messerli falsely represented that Burke would have to bear the burden of supporting her dispute of the debt by disproving the debt, when, under the FDCPA, the opposite is true and the burden actually is on the debt collector to prove the existence of the debt.

contain[s] an objective element of reasonableness . . . that prevents liability for bizarre or idiosyncratic interpretations of collection notices." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quotations omitted).

Messerli argues that to the extent its communications to Burke incorrectly represented that the debt was still owed, it did not know that the information it had received from Capital One was incorrect and, thus, any misrepresentation was unintentional. Messerli also contends that it is entitled to the bona fide error defense in 15 U.S.C. § 1692k(c) because (1) any false representation in its communications was unintentional, resulting from a bona fide error and (2) the error occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. See Jenkins v. Heintz, 124 F.3d 824, 828 (7th Cir. 1997). Burke responds that even an unintentional misrepresentation violates § 1692e and that Messerli cannot avail itself of the bona fide error defense under the facts of this case.

As an initial matter, an unintentional misrepresentation can be actionable under § 1692e. See Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000) (citing Russel v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)); accord Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1175 (9th Cir. 2006). If, as Messerli contends, only representations made with intent to mislead were actionable under § 1692, there would be no need for the bona fide error defense in § 1692k(c) since all unintentional false representations would be exempt regardless of whether they were caused by an objectively bona fide error that occurred notwithstanding the use of procedures reasonably adapted to prevent that error. See McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 743 n.8 (N.D. Ill. 2003). Thus, the remaining issue is whether Messerli's communications qualify for the bona fide error defense.

The Eighth Circuit has held:

> To establish the bona fide error defense, a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error.

Wilhelm, 519 F.3d at 420. Messerli claims reliance on its client's representation in sending the February 25 demand letter and argues that numerous courts have held that such reliance qualifies for the bona fide error defense. But as Burke argues, the claim is not that Messerli violated § 1692e(2)(A) by representing in the initial demand letter that Burke owed the debt; rather, her claim is that Messerli violated the Act when, after Burke disputed the debt, it continued to represent that Burke owed the debt without verifying the debt. A jury could find that Messerli violated the Act because the inclusion of the disclosure in the March 13 letter that it was "an attempt to collect a debt" and that any information obtained would be used "for that purpose" would permit the inference that an unsophisticated consumer would view the letter as representing that the debt was still owed.

Once Burke disputed the debt, the reasonable procedure to avoid this violation would have been for Messerli to verify the nature and status of the debt *before* sending another communication to Burke that expressly stated it was "an attempt to collect a debt." Had Messerli followed the procedure of contacting Capital One to verify the debt, it presumably would have learned that the debt had been resolved. At that point, Messerli would have had no need to send an additional *collection* communication to Burke. Instead of following such a procedure, Messerli promptly sent a letter to Burke that implicitly, if not explicitly, represented that Burke owed the debt. Messerli has not shown that it followed procedures reasonably

15

adapted to prevent the violation alleged by Burke and, thus, is not entitled to summary judgment on the basis of the bona fide error defense.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Messerli's Motion for Judgment on the Pleadings or Summary Judgment [Docket No. 13] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 9, 2010.